IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
DELTA DIVISION

HARRY CLIMER                                                              PLAINTIFF

V.                                                        NO. 2:12-CV-00047-DMB-JMV

HARRAH'S ENTERTAINMENT, INC.;
HARRAH'S OPERATING COMPANY,
INC.; and ROBINSON PROPERTY
GROUP CORP.                                                            DEFENDANTS

**MEMORANDUM OPINION AND ORDER
GRANTING MOTION FOR SUMMARY JUDGMENT**

This is an employment discrimination action brought by Plaintiff Harry Climer, who alleges that his former employer, Defendant Robinson Property Group,[1] terminated his employment due to his age and disability. Doc. #1. On May 5, 2013, Defendant filed a motion for summary judgment seeking dismissal of all claims. Doc. #52. For the reasons that follow, the motion for summary judgment is granted.

**I.
Motion for Summary Judgment Standard**

"Summary judgment is appropriate when there are no genuine issues as to any material facts, and the moving party is entitled to judgment as a matter of law." *Norwegian Bulk Transport A/S v. Int'l Marine Terminals P'ship*, 520 F.3d 409, 411 (5th Cir. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)). To award summary judgment, "[a] court must be satisfied that no reasonable trier of fact could find for the nonmoving party or, in other words, that the evidence favoring the nonmoving party is insufficient to enable a reasonable jury to return a verdict in her favor." *Id.* at 411–12 (internal quotation marks omitted). To this end,

---

[1] Although the complaint was filed against multiple defendants, on April 17, 2014, the parties filed a joint stipulation identifying Defendant Robinson Property Group Corp. as the only proper defendant in this action. Doc. #51.

"[t]he moving party bears the burden of establishing that there are no genuine issues of material fact." *Id.* at 412.

"If, as here, the nonmoving party bears the burden of proof at trial, the moving party may demonstrate that it is entitled to summary judgment by submitting affidavits or other similar evidence negating the nonmoving party's claim, or by pointing out to the district court the absence of evidence necessary to support the nonmoving party's case." *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). If the moving party makes the necessary demonstration, "the burden shifts to the nonmoving party to show that summary judgment is inappropriate." *Id.* In making this showing, "the nonmoving party must go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Cotroneo v. Shaw Env't & Infrastructure, Inc.*, 639 F.3d 186, 191–92 (5th Cir. 2011) (internal punctuation omitted). When considering a motion for summary judgment, the Court "resolve[s] factual controversies in favor of the nonmoving party." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

## II.
## Evidentiary Matters

In his response to the motion for summary judgment, Plaintiff seeks to rely on numerous statements attributed to Charles Lebo, a kitchen mechanic employed by Defendant. Doc. #54-6 at 8, 13. Specifically, Plaintiff testified that Lebo told him "that Jeff Rich [one of Plaintiff's supervisors] said that he was going to let me go … because of my age and because I had gotten hurt." Doc. #54-1 at 47. Plaintiff also testified that Rich stated that Defendant could have "let a couple [younger] dispatchers go" and kept Plaintiff, but that Defendant declined to do so. *Id.* at 76. For his part, Rich testified that he played no role in the decision to terminate Plaintiff and

that he did not become aware of the decision to terminate Plaintiff until approximately thirty minutes before Plaintiff was notified that he had been terminated. Doc. #52-4 at 34. Defendant argues that Lebo's purported statements are inadmissible hearsay. Plaintiff responds that the statements are admissible as present sense impressions or admissions of a party opponent. Doc. #55 at 2 n.2. In evaluating these arguments, the Court notes that the evidence involves two levels of hearsay: (1) Lebo's alleged statements to Plaintiff; and (2) Rich's alleged statements to Lebo.

### A. Present Sense Impression

Rule 803(1) provides that hearsay statements "describing or explaining an event or condition, made while or immediately after the declarant perceived it" "are not excluded by the rule against hearsay." Fed. R. Evid. 803(1). "[T]he burden of showing the elements of admissibility for a statement under the present sense impression exception, like the burden on evidentiary issues generally, is on the proponent of the evidence." *Versata Software, Inc. v. Internet Brands, Inc.*, No. 2:08-cv-313, 2012 WL 2595275, at *9 (E.D. Tex. Jul. 5, 2012) (collecting cases). In this regard, the Fifth Circuit has held that a delay of fifteen minutes between the occurrence of an event and a statement is insufficient to meet the immediacy requirement of the exception "unless the declarant was still in a state of excitement resulting from the event." *U.S. v. Cain*, 587 F.2d 678, 681 (5th Cir. 1979).

Here, there is no indication that Lebo's statements were made immediately after the alleged conversation with Rich. Similarly, there is no evidence that Rich's alleged statements were made immediately after his alleged discovery of information concerning Plaintiff's termination. Furthermore, there is no evidence that Rich and Lebo were "still in a state of

excitement," if at all, resulting from such events.  Lacking such evidence, the present sense impression hearsay exception does not apply.

    **B. Admission of Party Opponent**

Rule 801(d)(2) excludes from the definition of hearsay a statement "offered against an opposing party … made by the party's agent or employee on a matter within the scope of that relationship and while it existed." Fed. R. Evid. 801(d)(2). Where alleged statements concern an employee's termination, the declarant must have been involved in the decision to terminate the employee. *See Ramirez v. Gonzales*, 225 Fed. App'x 203, 210 (5th Cir. 2007) ("Longoria's comments to Walker do not fall within the party opponent exception because they concerned matters outside the scope of her employment, since Longoria was not involved in the decision to terminate Ramirez."). Here, there is no dispute that neither Rich nor Lebo were involved in the decision to terminate Plaintiff. Accordingly, the party opponent exception may not be invoked.

    **C. Summary**

Because neither of the challenged statements[2] qualifies as a present sense impression or a statement of a party opponent, the evidence must be excluded as inadmissible hearsay. Fed. R. Evid. 802. As such, the hearsay statements will not be considered at this summary judgment stage.

**III.**
**Relevant Facts**

Plaintiff was born on October 24, 1948. Doc. #52-1 at 12. From September 1988, through June 2007, Plaintiff was employed as an "electrical engineer" with VHS 1. *Id*. at 19–20. In this role, Plaintiff "specialized" in television repair, but could "fix pretty much anything

---

[2] Defendant objected to other evidence as inadmissible hearsay. Such evidence has not been relied upon in this decision. Accordingly, Defendant's other objections are overruled as moot.

4

electrical." *Id.* at 20. During his tenure at VHS 1, Plaintiff repaired televisions for Defendant's Horseshoe Casino. *Id.* Following the closure of VHS 1 in July of 2007, Plaintiff was contacted by a representative of Defendant regarding potential work at Horseshoe Casino. *Id.*

### A. Plaintiff's Job Title and Duties

Plaintiff met with George Byers, then a regional vice president for Defendant, and received a job offer to "take care of … electronic[] equipment." Doc. #52-1 at 21–22. Plaintiff accepted the offer and became responsible for the "care of all the TV's for the three casinos and all five hotels." *Id.* at 22–23. In addition to televisions, Plaintiff bore responsibility for the repair and maintenance of "anything electronic." *Id.* at 24.

Ricky Busey, a regional vice president who oversaw human resources functions for Defendant, testified that Defendant intended to hire Plaintiff as a "maintenance facilities engineer lead." Doc. #54-3 at 6–7, 17–18. Busey intended to hire Plaintiff into a "lead" position because Plaintiff "wanted a rate of pay higher than the pay grade for a facilities engineer [and] the only way HR would approve a rate higher was if they hired him into the lead category." *Id.* at 17. This testimony appears to conflict with the testimony of Byers who recalled that Plaintiff's salary request was in the "mid low to mid range" for what an average mechanic would make. Doc. #54-2 at 26. Despite Defendant's intention, Defendant's records indicate that Plaintiff was hired as a "facilities mechanic." Doc. #54-3 at 18. Sometime later, Plaintiff was re-classified in Defendant's system as a "lead." *Id.* at 48. There is no evidence that Plaintiff was ever notified of this change.

At some point during Plaintiff's employment, each facilities mechanic was reclassified as either "facilities engineer or facilities engineer lead depending on what they had."[3] Doc. #54-3

---

[3] This re-classification has created some confusion in the record insofar as references to "mechanics" and "engineers" appear to be used interchangeably. The Court will treat the terms as synonymous.

at 18.  According to a written job description, a "lead" facilities engineer's "essential job functions" included: (1) "Supervis[ing] and motivat[ing] employees;" (2) "Tak[ing] a leadership role in reporting and correcting unsafe work practices or unsafe facility conditions; and (3) "Train[ing] and assist[ing] area apprentices and engineers in repair procedures and company policy."  *Id.* at Ex. 3.  It is undisputed that Plaintiff had no supervisory authority at any point during his employment with Defendant.  Doc. #54-5 at 14.

On April 15, 2008, Plaintiff received an increase in pay from $17.50 per hour to $18.50 per hour.  Doc. #54-2 at Ex. 2.  The increase, which was designated Salary Change ONLY," was approved by Shay Nolan, Facilities Manager, and George Byers, Regional Vice President of Facilities.  *Id.*  In a comments section, the salary change document provided:

> Harry began working with Horseshoe facilities as TV mechanic (specifically in the A/V areana [sic]) and in his short tenure he has progressed to repairs and installs at both the Sheraton and Grand properties.  This request is too [sic] give Harry a salary adjustment to scale ….  The salary code was also increased to reflect the increased responsibilities.

*Id.*  According to Byers, Plaintiff did not work as a lead mechanic/engineer.  *Id.* at 21.  Jeff Rich, the facilities manager who supervised Plaintiff, also testified that he did not consider Plaintiff a lead because Plaintiff "wasn't actually in a supervisal [sic] role."  Doc. #54-5 at 8, 16.

From January 2008 through July 2010, Rich completed four performance evaluations of Plaintiff.  Doc. #54-5 at Ex. 2.  Each evaluation listed Plaintiff as a "Mechanic," and rated him as "consistently meet[ing]" or "consistently exceed[ing]" expectations in each evaluated category.  *Id.*  The lower ratings of "consistently meet[ing]" were due in part to what Rich deemed to be excessive absenteeism on the part of Plaintiff.  *Id.* at 29–30.  According to Rich, the demerits for absenteeism applied even for excused absences.  *Id.* at 30.

### B. Plaintiff's Injury and Plaintiff's Wife's Illness

Plaintiff's absences from work stemmed from two causes: (1) an injury to his knee; and (2) a need to care for his ailing wife.

#### 1. Knee Injury

On December 29, 2008, Plaintiff's knee "popped" when he bent down to pick up his toolbox. Doc. #52-1 at 58–61. On January 5, 2009, Plaintiff reported the knee injury to Defendant. *Id.* at Ex. 13. Following the report, Defendant transported Plaintiff to the Tunica Medical Clinic where he saw James C. Varner, M.D., on January 14, 2009. *Id.* at 58–60 & Ex. 13.

Dr. Varner diagnosed Plaintiff with "internal derangement" of the right knee but cleared him to return to regular duty. Doc. #52-1 at Ex. 14. Results of an MRI showed a "small tear with a discoid medial meniscus." *Id.* at Ex. 15. At follow-up appointments on January 28 and February 16 of 2009, Dr. Varner continued to return Plaintiff to regular duties. *Id.* Dr. Varner also cleared Plaintiff for regular duty on May 18, 2009; June 15, 2009; July 13, 2009; and August 19, 2009. *Id.* at Exs. 17–20.

Plaintiff testified that he was able to work but "finally it got so bad that I had to go do something." Doc. #54-1 at 51. On October 15, 2010, Plaintiff received surgery on his injured knee. Doc. #52-1 at 65. Plaintiff took approximately three weeks of leave due to the surgery and was cleared to return to regular duty on November 8, 2010. *Id.* at 65–66 & Ex. 21. A November 3, 2010, post-operative evaluation of Plaintiff indicated that from November 3, 2010, until November 8, 2010, Plaintiff was limited to "Seated/Sedentary position[s]." *Id.* at Ex. 21.

### 2. Wife's Illness

On April 16, 2010, Plaintiff completed a form titled, "Family Medical Leave Act Certification of Health Care Provider for Family Member's Serious Health Condition." Doc. #52-1 at Ex. 25. In the form, Plaintiff requested leave to care for his spouse, Linda Climer. *Id.*

Defendant's records reflect that Plaintiff's request was approved with an effective date of May 24, 2010. *Id.* at Ex. 26. However, Plaintiff testified that he was notified by Jeff Rich that the request had been denied. *Id.* at 89. Plaintiff testified that he was forced to "get somebody else" to care for his wife, but that he "made [Defendant] mad at me a couple of times when I had to come in late or whatever." *Id.*

### 3. Plaintiff's Termination

Plaintiff's employment was terminated on November 11, 2010. Doc. #52-2 at 33–35. Busey testified that he and Randy Wooten, the Facilities Director, decided to terminate Plaintiff. *Id.* at 33–34. Busey further testified that Plaintiff's termination was a result of a large-scale reduction in Defendant's workforce which included the elimination of "two of the three leads at property group [sic] or the facilities engineering leads." *Id.* at 34–35. At the time of the reduction, Busey believed that there were three leads within Plaintiff's department: (1) James Stovall, a 67 year old; (2) Willie Lee, a 60 year old; and (3) Plaintiff, who was then 61 years old. Doc. #52-5 at ¶ 5.

At the time Defendant terminated Plaintiff, it elected to retain numerous mechanics/engineers[4] in the Facilities Department. Doc. #54-5 at 24. Some of the retained Facilities mechanics/engineers were younger than Plaintiff. *Id.* Some of the retained Facilities

---

[4] According to Busey, the Facilities Department, which at the time of Plaintiff's termination numbered approximately forty-five employees, had a dispatcher and three leads; the remaining employees were mechanics. Doc. #54-3 at 36–37.

mechanics/engineers had less seniority than Plaintiff. *Id.* at 25. Defendant also retained at least two dispatchers who Plaintiff described as "young." Doc. #54-1 at 70.

Termination decisions during the reduction were made by rating employees based upon performance ratings and then by seniority. Doc. #52-2 at 45. Busey terminated Plaintiff and Lee because they received the lowest performance ratings of the three "leads."[5] Doc. #52-5 at ¶¶ 5–8.

From November 2010 until approximately November 2011, Defendant retained a third party to repair televisions under warranty. Doc. #54-3 at 49–50. In or around November 2011, Defendant began using its Audio Visual Department to repair and/or replace external components of televisions. *Id.*

## III.
## Analysis

Plaintiff's complaint asserts three claims: (1) a claim for wrongful termination brought under the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621, et seq.; (2) a claim for wrongful termination brought under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq., and its 2008 amendment; and (3) a claim brought under 42 U.S.C. § 1981. Doc. #1. Defendant has moved for summary judgment on all three claims. Doc. #53. Plaintiff's response brief addressed only the age and disability discrimination claims. Doc. #55. Accordingly, Plaintiff's § 1981 claim is deemed abandoned. *See Aldrup v. Caldera*, 274 F.3d 282, 288 (5th Cir. 2001) ("[The plaintiff's] claim ... was waived because it was not raised in his response to defendant's motion for summary judgment."); *see also Laney v. Bowles*, No.

---

[5] Because Stovall had the highest performance rating possible and more seniority than Plaintiff, Busey explained that Plaintiff would have been terminated even if Plaintiff had received perfect performance ratings. Doc. #52-2 at 45.

2:11-cv-318, 2014 WL 2468616, at *5 (N.D. Ind. June 3, 2014) (plaintiff's arguments regarding cause of injury waived where plaintiff failed to address issue in her memorandum in opposition).

### A. Age Discrimination Claim

The ADEA provides that "[i]t shall be unlawful for an employer … to discharge any individual … because of such individual's age." 29 U.S.C. § 623. "To establish an ADEA claim, a plaintiff must prove by a preponderance of the evidence (which may be direct or circumstantial) that age was the 'but-for' cause of the challenged employer decision." *Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (5th Cir. 2010). Where, as here, there is no direct evidence of discrimination,[6] the "ADEA claim is analyzed under the familiar *McDonnell Douglas* burden-shifting framework." *Kean v. Jack Henry & Assocs., Inc.*, No. 3:12-cv-1159, 2013 WL 2983504, at *3 (N.D. Tex. Jun. 17, 2013); *see also Moss*, 610 F.3d at 922.

"Under *McDonnell Douglas*, a plaintiff must first establish a prima facie case of age discrimination …. Once the plaintiff establishes a prima facie case, the burden of production shifts to the defendant to proffer a legitimate nondiscriminatory reason for its employment action …. If the defendant meets its burden … the plaintiff must meet its ultimate burden of persuasion [b]y producing evidence tending to show that the reason offered by the defendant is pretext for discrimination." *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 350 (5th Cir. 2005) (internal footnotes omitted).

---

[6] "Direct evidence … is evidence which, if believed, would prove the existence of a fact (i.e., unlawful discrimination) without any inferences or presumptions." *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 958 (5th Cir. 1993). Even if admissible, the evidence that Rich stated that Plaintiff was fired due to his age is not direct evidence of discrimination because it requires an inference that somebody involved in the decision-making process made such a statement to Rich. *See Turner v. Claims Admin. Corp.*, 993 F.Supp. 982, 985 n.3 (W.D. Tex. 1998) ("[S]tatements made by persons not involved in the decision to discharge the plaintiff or statements made by decision makers that are unrelated to the decision do not constitute direct evidence that the plaintiff's membership in a protected class influenced the decision.").

1. **Prima Facie**

In cases where a plaintiff has been laid off as a part of a reduction-in-force, a prima facie case of age discrimination requires evidence that: "(1) the plaintiff is a member of a protected class; (2) the plaintiff was adversely affected; (3) the plaintiff was objectively qualified to assume another position at the time of discharge; and (4) the employer intended to discriminate in reaching its decision." *Peterson v. Bell Helicopter Textron, Inc.*, 901 F.Supp.2d 846, 854 (N.D. Tex. 2012) (citing *Reeves v. Sanderson Plumbing*, 530 U.S. 133 (2000)). Defendant argues that Plaintiff cannot meet the third and fourth elements of his prima facie case. Doc. #53 at 6.

The record reflects that Plaintiff's primary supervisor, Jeff Rich, believed Plaintiff to be a mechanic and gave him average-to-high ratings for performance relative to the position. Furthermore, Rich testified that Plaintiff was capable of performing the duties of a dispatcher. Doc. #54-5 at 32–33. Based on the foregoing, the undersigned concludes that Plaintiff has introduced sufficient evidence for the Court to conclude that he was qualified to assume two positions—mechanic and dispatcher. Accordingly, the third element of Plaintiff's prima facie case is satisfied.

With regard to the fourth element, "evidence that younger employees were treated more favorably, [even] without any allegations that the younger employees were less qualified, is generally sufficient to shift the burden to the employer in the second stage of the *McDonnell Douglas* framework." *Thompson v. Origin Tech. In Bus., Inc.*, No. 3:99-cv-2077, 2001 WL 1018748, at *6 (N.D. Tex. Aug. 20, 2001). The evidence shows that Defendant retained younger employees in the mechanic/engineer and dispatching positions. Insofar as Plaintiff was qualified to hold each of these positions, he has proven the fourth element of his prima face case. *Id.*; *see*

*also Pribila v. Emerson Elec. Co.*, No. 3:00-cv-2742, 2002 WL 629528, at *3 (N.D. Tex. Apr. 16, 2002) ("Because Pribila has shown that he was over 40 years of age when he was terminated and that younger employees were retained, the Court will assume *arguendo* that Pribila has established a prima facie case.").

### 2. Legitimate Nondiscriminatory Reason

Having found that Plaintiff has satisfied his prima facie case, the burden shifts to Defendant to proffer a legitimate nondiscriminatory reason for Plaintiff's termination. *Machinchick*, 398 F.3d at 350. In this regard, "a reduction in force … is itself a legitimate, nondiscriminatory reason for discharge … ." *E.E.O.C. v. Texas Instruments Inc.*, 100 F.3d 1173, 1181 (5th Cir. 1996); *see also Pryor v. MD Anderson Cancer Ctr.*, 495 Fed. App'x 544, 547 (5th Cir. 2012) ("A reduction in force is a legitimate, non-discriminatory reason for eliminating positions and discharging employees."). Accordingly, Defendant's burden is easily satisfied.

### 3. Pretext

In reduction-in-force claims, a plaintiff

> can raise a genuine dispute as to pretext by proffering competent summary judgment evidence that (1) he was "clearly better qualified" than similarly-situated younger employees who were not terminated, (2) the reduction in force was a sham or a pretext for age discrimination, or (3) although the reduction in force was legitimate on its face, [it was] implemented … in such a way that age was impermissibly used as a factor to determine which employees were terminated.

*Peterson*, 901 F.Supp.2d at 858 (citing *Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 42 (5th Cir. 1996)) (internal footnotes omitted).

With regard to proving pretext through qualification, the Fifth Circuit has held that "the bar is set high for this kind of evidence because differences in qualifications are generally not probative evidence of discrimination unless those disparities are 'of such weight and significance

that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question.'" *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 357 (5th Cir. 2001).

Here, although Plaintiff introduced some evidence that younger employees and employees with less seniority were retained, he has not pointed to a single retained employee who was similarly situated to him by virtue of having the same or less seniority <u>and</u> having received equal or worse performance evaluations. *See Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 659 (5th Cir. 2012) (plaintiff could not show pretext where he failed to establish "that the conduct that drew the adverse employment decision was nearly identical") (internal punctuation and quotation marks omitted). More importantly, Plaintiff has failed to offer specific evidence showing that he was clearly more qualified than any of the retained employees. *See Baumeister v. AIG Global Inv. Corp.*, 420 Fed. App'x 351, 355 (5th Cir. 2011) ("But aside from the fact that Baumeister had more tenure … than did Parry, there is no evidence in the record as to Parry's qualifications, making any comparison between him and Baumeister impossible."); *see also Vinson v. Chromalloy Gas Turbine, LLC*, No. 3:09-cv-1746, 2010 WL 4867566, at *5 (N.D. Tex. Nov. 23, 2010) ("To establish a fact question as to relative qualifications, a plaintiff must provide sufficiently specific reasons for his contention that he was clearly better qualified; mere subjective speculation will not suffice.").

Additionally, Plaintiff argues that: (1) Plaintiff's "performance evaluation was downgraded for a discriminatory reason, his missing work for FMLA leave;" and (2) Plaintiff "was not regarded as a maintenance engineering lead and was not evaluated as a maintenance engineering lead." Doc. #55 at 15–16.

13

As an initial matter, while Plaintiff's negative performance evaluation following the exercise of his FMLA rights may be relevant to a potential FMLA retaliation claim, neither the evaluation nor its allegedly wrongful motivation provides any support for the proposition that Plaintiff's termination was motivated by age discrimination. *See Kelly v. Boeing Petroleum Servs., Inc.*, 61 F.3d 350, 358 (5th Cir. 1995) ("acts of unrelated discrimination are irrelevant"). Furthermore, a wrongful classification standing alone is insufficient evidence of pretext, absent evidence that the wrongful classification was motivated by discriminatory animus. *Marcano-Rivera v. Pueblo Intern., Inc.*, 232 F.3d 245, 253 (1st Cir. 2000) ("[E]ven if we accept that Marcano was not properly classified as a produce clerk pursuant to the terms of the collective bargaining agreement, Marcano has still not shown that the erroneous classification—let alone the company's reduction in force—was a pretext for discrimination."). Because Plaintiff has failed to provide any evidence which would suggest a discriminatory intent in either his classification or his ultimate termination, the Court concludes that he has failed to show pretext and that, therefore, Defendant's motion for summary judgment on the ADEA claim should be granted.

### B. Disability Discrimination

The Americans with Disabilities Act "prohibits discrimination against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training and other terms, conditions, and privileges of employment." *Daigle v. Liberty Life Ins. Co.*, 70 F.3d 394, 396 (5th Cir. 1995).

In his complaint, Plaintiff alleges that Defendant engaged in unlawful disability discrimination when it: (1) disciplined Plaintiff for missing work to care for his disabled wife;

(2) terminated Plaintiff due to his disability; and (3) terminated Plaintiff due to his wife's disability. Doc. #1 at ¶¶ 47–59. Defendant argues that Plaintiff's personal disability claim fails because he cannot establish a claim for disability discrimination; and that Plaintiff's associational disability discrimination claims (those related to his wife's disability) fail because the Fifth Circuit does not recognize such claims and that, even if it did, Plaintiff cannot meet the associational disability claim's requisite elements. Doc. #53 at 10–15. Plaintiff's response failed to address Defendant's arguments regarding the viability of his associational disability claims. Accordingly, Plaintiff is deemed to have waived these claims. *Aldrup*, 274 F.3d at 288. Thus, the only question is whether a genuine issue of material fact exists as to whether Defendant violated the ADA by terminating Plaintiff due to a disability.

As with claims under the ADEA, a plaintiff may support an ADA claim by introducing direct or circumstantial evidence of discrimination. *Daigle*, 70 F.3d at 396. Where, as here, Plaintiff relies on circumstantial evidence of discrimination, the Court applies the *McDonnell Douglas* burden shifting framework, explained above. *Id.*

 1. **Prima Facie**

Generally, "a prima facie case under the ADA requires a plaintiff to show that he (1) has a disability; (2) was qualified for the job; and (3) was subject to an adverse employment decision because of his disability." *Shirley v. Precision Castparts Corp.*, 726 F.3d 675, 680 (5th Cir. 2013). While it appears the Fifth Circuit has not addressed the elements of a prima facie ADA case arising from a reduction in work force, other circuits addressing the issue have applied the reduction in force prima facie standard applicable to other types of discrimination claims. *See DeLuca v. Winer Indus., Inc.*, 53 F.3d 793, 797 (7th Cir 1995); *Aucutt v. Six Flags Over Mid-America, Inc.*, 85 F.3d 1311, 1318 (8th Cir. 1996); *Crane v. Monterey Mushroom, Inc.*, 910

F.Supp.2d 1032, 1045 (E.D. Tenn. 2012). Following this guidance, this Court will apply the Fifth Circuit's reduction in force prima facie standard to Plaintiff's ADA claim.

Accordingly, to establish a prima facie case, Plaintiff must show that: (1) he is a member of the protected class (he is disabled); (2) the plaintiff was adversely affected; (3) the plaintiff was objectively qualified to assume another position at the time of discharge; and (4) the employer intended to discriminate in reaching its decision. *See Peterson*, 901 F.Supp.2d at 854. In wrongful discharge actions, the existence of a disability is determined at the time of termination. *Nicholson v. Parascelsus Mesquite Hosp., Inc.*, No. 3:98-cv-0604, 2000 WL 62940, at *4 (N.D. Tex. Jan. 24, 2000); *see also Wehrley v. Am. Family Mut. Ins. Co.*, 513 Fed. App'x 733, 740 (10th Cir. 2013) ("The district court focused on the wrong time-frame in considering whether Plaintiff believed he was disabled, looking at Plaintiff's beliefs in June 2007 rather than when he was terminated in August 2008.").

For years, federal courts applied a strict standard to determine whether a particular condition rose to the level of a disability. *See, e.g., Hamilton v. Sw. Bell Tel. Co.*, 136 F.3d 1047, 1051 (5th Cir. 1998) ("We agree with the district court that any work impairment Hamilton may have suffered was merely temporary; we have previously rejected attempts to transform temporary afflictions into qualifying disabilities"); *Rogers v. Int'l Marine Terminals, Inc.*, 87 F.3d 755, 759 (5th Cir. 1996) ("A wide range of afflictions, many considerably more severe than Rogers's surgically correctable and now corrected ankle difficulties, do not constitute disabilities under the ADA."). In response to what it perceived as unduly harsh jurisprudence, Congress passed the ADA Amendments Act of 2008 ("ADAAA") "to expand the coverage of the ADA." *Neely v. PSEG Texas, Ltd. P'ship*, 735 F.3d 242, 244 (5th Cir. 2013); *see also Cook v. Equilon Enters., L.L.C.*, No. 4:09-cv-0756, 2010 WL 4367004, at *6 (S.D. Tex. Oct. 26, 2010) ("The

16

ADAAA rejected what Congress perceived to be the Supreme Court's unduly restrictive approach to analyzing whether a plaintiff suffered from a 'disability' for purposes of the ADA.").

Following the enactment of the ADAAA, to be considered disabled, a person must suffer from a "physical or mental impairment that substantially limits one or more life activities[; have] a record of such an impairment; or [be] regarded as having such an impairment." 42 U.S.C. § 12102. "[M]ajor life activities include, but are not limited to ... sleeping, walking, standing, lifting, bending, ... concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A). In determining whether an impairment substantially limits a major life activity, a court must not consider "the ameliorative effects of mitigating measures." *Id.* § 12012(4). "An impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting. Nonetheless, not every impairment will constitute a disability within the meaning of this section." 29 C.F.R. § 1630.2.

Here, Plaintiff appears to allege a disability based on his knee injury. "A knee injury is doubtless a 'physical impairment' within the meaning of the statutory language of the ADA." *Pinckney v. Fed. Reserve Bank of Dallas*, No. SA-12-CV-00324, 2013 WL 5461873, at *7 (W.D. Tex. Sep. 30, 2013). Accordingly, the question becomes whether, at the time of his termination: (1) Plaintiff's impairment substantially limited a major life activity; (2) Plaintiff had a record of such an impairment; or (3) Defendant regarded Plaintiff as having such an impairment. 42 U.S.C. § 12102.

      a.   Actual Impairment

Plaintiff points to no evidence that, at the time of his termination, his knee injury substantially impaired a major life activity. Indeed, the record reflects that Plaintiff was cleared to return to regular duty on November 8, 2010, three days before his termination. Under these

circumstances, the Court concludes that Plaintiff has failed to create a genuine issue of material fact as to the existence of an actual disability at the time of his termination. *See Koller v. Riley Riper Hollin & Colagreco*, 850 F.Supp.2d 502, 509–10, 514 (E.D. Pa. 2012) (no actual disability where plaintiff was terminated approximately two weeks after returning to work following ACL surgery).

        b.    Record of Impairment

The "record of" prong is "tailor-made for plaintiffs who … claim they once suffered from a physical or mental impairment that substantially limited a major life activity, recovered from the impairment, but nonetheless faced employment discrimination because of it." *Adams v. Rice*, 531 F.3d 936, 945–46 (D.C. Cir. 2008). "[I]n order to make out a claim for discrimination based on a record of impairment, the plaintiff must show that at some point in the past, she was classified or misclassified as having a mental or physical impairment that substantially limits a major life activity." *Sherrod v. Am. Airlines, Inc.*, 132 F.3d 1112, 1120–21 (5th Cir. 1998).

Here, a review of the records of Plaintiff's knee injury reveal: (1) a series of evaluations each releasing Plaintiff to regular duty; and (2) a November 3, 2010, post-operative evaluation recommending that Plaintiff be limited to "Seated/Sedentary" work from November 3, 2010, until November 8, 2010. Even under the more lenient standards of the ADAAA, "[a] temporary condition post-surgery does not qualify as a disability." *Lee v. Spectranetics Corp.*, No. 12-cv-00633, 2013 WL 5416972, at *4 (D. Colo. Sep. 27, 2013); *see also Butler v. BTC Foods Inc.*, No. 12-492, 2012 WL 5315034, at *3 (E.D. Penn. Oct. 19, 2013) (under the ADAAA, "an employee's inability to work for a period after recovering from surgery does not necessarily support a finding that [he] has a disability"). Thus, Plaintiff's medical records do not reveal a

disabling impairment and he may not be considered disabled under the "record of" prong. *Sherrod*, 132 F.3d at 1120–21.

### c. Regarded As

"One is regarded as having a substantially limiting impairment if the individual (1) has an impairment which is not substantially limiting but which the employer perceives as constituting a substantially limiting impairment; (2) has an impairment which is substantially limiting only because of the attitudes of others toward such an impairment; or (3) has no impairment at all but is regarded by the employer as having a substantially limiting impairment." *Bridges v. City of Bossier*, 92 F.3d 329, 332 (5th Cir. 1996). "Evidence that an employer was merely aware of an impairment is not sufficient to survive summary judgment. Under the ADA, a plaintiff must show she is 'regarded as' having an impairment that *substantially limits* one or more major life activities." *Cato v. First Fed. Cmty. Bank*, 668 F.Supp.2d 933, 942–43 (E.D. Tex. 2009) (emphasis in original) citing *Deas v. River West, L.P.*, 152 F.3d 471, 476 (5th Cir. 1998)).

Here, Plaintiff has offered no evidence or argument that Defendant regarded his knee injury (or any impairment) as substantially limiting one or more major life activities. Accordingly, the Court concludes that Defendant did not regard Plaintiff as disabled under the ADA.

### 2. Summary

Plaintiff has not shown that he was "disabled," as that term is used in the ADA. Accordingly, he cannot make out a prima facie case of disability discrimination, and his wrongful termination claim must fail. *Daigle*, 70 F.3d at 396.

# IV.
# Conclusion

For the reasons above, the Court concludes that: (1) Plaintiff has failed to show that the stated reason for his termination is pretext for unlawful age discrimination under the ADEA; (2) Plaintiff has waived his claims for associational disability discrimination under the ADA; and (3) Plaintiff has failed to show a prima facie case of disability discrimination under the ADA. Accordingly, Defendant's motion for summary judgment, Doc. #52, is **GRANTED.**

SO ORDERED, this the 23rd day of July, 2014.

/s/ Debra M. Brown
**UNITED STATES DISTRICT JUDGE**